UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/10/2020
```

MONIQUE BUNN,

                              Plaintiff,

   -v-

DAMON ANTHONY DASH, DAMON
DASH STUDIOS, POPPINGTON LLC, and
RAQUEL HORN,

                              Defendants.

No. 19-cv-11804 (MKV)
OPINION AND ORDER

MARY KAY VYSKOCIL, District Judge:

      Monique Bunn seeks a default judgment in excess of $50,000,000 against Damon Dash, Raquel Horn, and their company. She alleges that when she went to Los Angeles to do business with them, Dash sexually assaulted her, and he and Horn stole her property. The defendants seek to set aside the Clerk's entry of default and dismiss this case. Bunn also brings a cross-motion for an enlargement of time to serve the defendants and to transfer the case. For the reasons set forth below, Bunn's motions are DENIED, the defendants' motion is GRANTED IN PART and DENIED IN PART, and this case shall be TRANSFERRED to the Central District of California.

                              I.      BACKGROUND[1]

      Plaintiff Monique Bunn is a resident of Pennsylvania. FAC ¶ 3. Bunn is a photographer who has taken pictures of a number of hip hop artists and other celebrities. *Id.* ¶ 9. Defendant Damon Dash is a music and movie producer. He is the chief executive officer of co-defendant Poppington LLC, d/b/a Damon Dash Studios, which is a New York Limited Liability Company.

---

[1] The facts are taken from the First Amended Complaint [ECF #49], hereinafter "FAC." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true.").

*Id.* ¶ 6.  Defendant Raquel Horn is an officer of Poppington LLC.  *Id.* ¶ 7.  Dash and Horn are in a romantic relationship.  *Id.* ¶ 13.

Bunn alleges that, in April 2019, she had "an existing business [relationship]" with Dash, and he "wanted [her] . . . to meet with him and shoot new programming" for his company.  *Id.* ¶ 8.  Horn arranged and paid for Bunn to fly to Los Angeles.  *Id.* ¶ 11.  On April 18, 2019, Bunn arrived in Los Angeles, and Horn arranged for a Lyft taxi to take Bunn to the home where Dash and Horn live together and where Bunn would stay during her trip.  *Id.* ¶ 13.

Bunn, Dash, and Horn later went to the company's studio.  *Id.* ¶ 14.  Bunn brought with her a host of valuable professional and personal belongings, including computers, photography equipment, the hard drives and other devices on which she stored her life's work, and diamond jewelry.  *Id.* ¶¶ 16, 33.  She left all of this at the studio.  *Id.* ¶ 17.

Bunn alleges that Dash "sexually assaulted" her on the night of April 18, 2019.  *Id*. ¶ 19.  In particular, she alleges that Dash—who "had been drinking alcohol and smoking marijuana all day" and "was wearing [only] a robe and . . . no underwear"—approached Bunn while she was sleeping and touched her breasts and buttocks.  *Id.*  She woke up and "was able to get Dash's hands off her breasts and buttocks."  *Id.* ¶ 20.  After Bunn said, "I am sleeping" and "I will fight you," Dash left the room.  *Id.*  Although she was "angry and frustrated by Dash's . . . unwanted touching," Bunn continued to "stay[] at the Dash residence."  *Id.* ¶ 21.

The next day, April 19, 2020, Bunn was given the company credit card to buy "additional equipment."  *See id.* ¶¶ 22, 24.  She bought approximately $3,000 worth of merchandise from the Apple Store.  *Id.* ¶ 24.  Bunn spent more time at the company's studio that day.  *See id.* ¶ 25.  When she left, she brought the items from the Apple Store back to Dash's home with her, but she again left behind the host of valuable professional and personal belongings that she had taken to

the studio the previous day, including "never seen prints of the Beatles, Count Basie and President Bush," as well as diamond earrings, a diamond ring, and a diamond bracelet. *See id.* ¶¶ 16, 25, 28, 31. That evening and the next day apparently passed without incident.

Late in the night of April 20, 2019, Dash and Horn confronted Bunn about her purchases. *See id.* ¶ 26. The parties disagreed about whether "Dash was aware of the purchases and approved them" and whether they "related to the services" Bunn was supposed to perform. *See id.* Bunn gave the items to Horn. *Id.* ¶ 27. She was told to leave their home, and Dash and Horn called a car to take her to a hotel. *Id.* ¶ 28. They "refused to allow Bunn" to get her things from the company's studio. *Id.* They said that they would send her belongings to her, but they never did. *Id.* ¶¶ 28–29.

Bunn initiated this action by filing a complaint and an affidavit of service [ECF #8, 17]. She asserts claims for: conversion against all of the defendants for the allege theft of the professional and personal belongings she left at the studio (Count I); sexual battery against Dash (Count II); negligence against his company for the alleged sexual battery (Count III); negligent infliction of emotional distress against Dash based on the alleged sexual battery (Count IV); and two claims of negligent infliction of emotional distress against all of the defendants based on the alleged conversion of her property (Counts V and VI). Bunn seeks damages in excess of $50,000,000.

Bunn's affidavit of service states that, on December 31, 2019, a process server effected substitute service on each of the defendants, under California Code of Civil Procedure § 415.20(c), by leaving a copy of the summons and complaint at 13547 Ventura Blvd., Ste. 199, Sherman Oaks, CA 91423, which is a commercial mailbox, and then sending a copy of the summons and complaint to that same address via first class mail on January 2, 2020 [ECF #17].

The affidavit of service states that this mailbox is "the only known address" for each defendant, even though Bunn had stayed with Dash and Horn at their home and had spent time at the company's studio over the course of several days. Based on that affidavit of service, answers were due on January 23, 2020. The next day, Bunn sought a certificate of default, which the Clerk of Court entered on January 24, 2020 [ECF #22].

Bunn now seeks a default judgment [ECF #23, 24, 26]. The defendants move to set aside the Clerk's default and dismiss this case [ECF #52 ("Def. Mem.")]. They argue that Bunn failed properly to serve them and that the Court lacks personal jurisdiction over them. They argue that California "is the only proper venue and forum for this action." Def. Mem. at 22. Bunn opposes these arguments [ECF #56 ("Pl. Opp.")]. She also brings a cross-motion for an enlargement of time to serve the defendants and to transfer this case to the Eastern District of Pennsylvania [ECF #58, 59 ("Pl. Cross Mot.")].

## II. DISCUSSION

The parties vehemently dispute whether Bunn properly served the defendants, whether the Court has personal jurisdiction over Dash and Horn based on their residences and contacts with New York, and whether the Court should dismiss or transfer this case based on the doctrine of *forum non conveniens*. Bunn argues that if the Court finds that service was defective, the Court should grant her an extension of time to effectuate proper service. In support of her argument that the Court has personal jurisdiction over the defendants, Bunn alleges that Dash and Horn are part-time residents of New York. She also argues that if the Court is persuaded by the defendants' *forum non conveniens* argument, the Court should transfer this case to her home state of Pennsylvania.

4

There are major problems with the parties' personal jurisdiction arguments on both sides. In particular, for purposes of personal jurisdiction, natural persons cannot be residents of more than one state. However, because the Court finds that Bunn failed properly to serve Dash and Horn, it lacks personal jurisdiction over them on that basis, and the Court need not wade into the details of the arguments about their residences and contacts with New York. Because this case obviously belongs in California, the Court rejects Bunn's requests to enlarge her time to serve the defendants and to transfer this case to Pennsylvania.

A. <u>Bunn Failed Properly To Serve the Defendants.</u>

A plaintiff must effectuate valid service of process before the district court can exercise personal jurisdiction over a defendant. *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). Any judgment entered against a party not subject to the personal jurisdiction of the court is a nullity. *See Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1908). Thus, any default judgment obtained by way of defective service would be void for lack of personal jurisdiction and would have to be set aside as a matter of law. *See American Inst. of Certified Pub. Accountants v. Affinity Card, Inc.*, 8 F. Supp. 2d 372, 375 (S.D.N.Y. 1998). Because the Court finds that Bunn failed properly to serve the defendants, the Court must deny Bunn's motion for a default judgment and grant the defendants' motion to set aside the Clerk's entry of default.

Bunn asserts that she properly effected substitute service on Dash and Horn pursuant to California Code of Civil Procedure ("CCP") § 415.20(c). The Court disagrees. There is no doubt that, in a federal diversity action, service of process may be made pursuant to the law of the state in which service is made. *See* Fed. R. Civ. P. 4(e)(1). The relevant statute provides that "*if the only address reasonably known* for the person to be served is a private mailbox obtained through a commercial mail receiving agency, service of process may be effected on the first

5

delivery attempt by leaving a copy of the summons and complaint with the commercial mail receiving agency." Cal. Civ. Proc. Code § 415.20(c) (emphasis added). Bunn has not offered the Court any basis to find that the commercial mailbox at 13547 Ventura Boulevard was the only address that she reasonably could have known for Dash and Horn.

All of Bunn's claims arise out of time that she spent where Dash and Horn live and work in Los Angeles. Bunn alleges that she is "unaware of the actual address of the residence." FAC ¶ 13. She adds that Horn arranged Bunn's transportation from the airport to the house when she arrived and from to the house to the hotel when she was asked to leave. *Id*. ¶¶ 13, 28. But Bunn fails to offer the Court any argument for why she could not "reasonably" be expected to know or find out where she lived and slept for several days. Indeed, Bunn's pleading makes clear that she went back and forth among the house, the company's studio, and other locations, such as the Apple Store, during her time in Los Angeles. Moreover, nowhere in Bunn's pleading does she disclaim knowledge of the studio's location. This raises the questions why she never attempted to serve Dash and Horn personally at the studio or to effectuate substitute service at the studio, as their "usual place of business," under CCP § 415.20(b).

Bunn contradicts her own assertion that the mailbox at 13547 Ventura Boulevard was the only address reasonably known for each of the defendants in her attempts to show that the Court has personal jurisdiction over them. *See* Pl. Opp. at 9–10; FAC ¶ 4; *see also id.* ¶ 5–7, Ex. A, C. In *Aussieker v. Lee*, a district court in the Eastern District of California found that the plaintiff failed to effectuate proper service of process under CCP § 415.20(c), explaining that a commercial mailbox was not the "only address reasonably known for" the defendant because the "plaintiff indicate[d] . . . other addresses he suspected to be associated with [the defendant]." 19-cv-365, 2020 WL 3961951, at *2 (E.D. Cal. July 13, 2020). In attempting to establish their

6

contacts with New York, Bunn cites several addresses associated with the defendants. *See* Pl. Opp. at 9–10; FAC ¶¶ 4, 5, Ex. A.  Indeed, she asserts that a "cursory investigation would have informed defense counsel" of these addresses. *Id*. at 10.  Bunn cannot simultaneously maintain that a commercial mailing address in California was the only address that she could "reasonably" discover to serve the defendants.[2]

B.  This Case Belongs in California.

In support of their motion to dismiss this case, the defendants argue that "the *only* proper venue . . . for this action" is in California.  Def. Mem. at 22.  The Court agrees.  Because this matter is before the Court based on diversity jurisdiction, under 28 U.S.C. § 1332, the applicable venue statute provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).  The remedy for lack of venue is for the district court to "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  *Id*. § 1406(a); *cf. Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) (explaining that section 1406(a) "authorize[s] the transfer of [a] cas[e] . . . whether the court in which it was filed had personal jurisdiction over the defendants or not").

---

[2] Bunn's counsel has brought at least two other, unrelated lawsuits against Dash in the Southern District of New York.  Bunn's counsel strenuously argues that the Court should consider these cases—and that Dash did not seek to dismiss them for lack of personal jurisdiction—fatal to Dash's argument that this Court lacks personal jurisdiction over him.  As explained above, the Court does not reach these arguments.  The Court does note, however, that the complaint in each of those cases lists another California address associated with Dash.  *Brooks v. Dash*, 19-cv-1944 [ECF #1 ¶ 3]; *Webber v. Dash*, 19-cv-610 [ECF #6 ¶ 5].

Venue is obviously proper in the Central District of California under subsection (2) of the venue statute because all of the events giving rise to each of Bunn's claims took place in or near Los Angeles, California. Bunn flew to Los Angeles to stay in Dash's home and work in his company's studio. *See* FAC ¶¶ 13–14. The First Amended Complaint expressly alleges that "Dash sexually assaulted Bunn in California" when it recites the basis for her claims of sexual battery against Dash (Count II), negligence against his company (Count III), and negligent infliction of emotional distress based on the California sexual assault (Count IV). *Id.* ¶¶ 49, 55, 66. Bunn was also in California when the defendants allegedly converted the professional and personal property that she left in the company's studio in Los Angeles. *See id.* ¶¶ 16, 28. Indeed, the basis for Bunn's claim of conversion (Count I), and the related claims of negligent infliction of emotional distress (Counts V and VI), is that her property remained in California when she left. That is why she "called the Burbank Police Department," who told her "she would need to appear in California to take action." *Id.* ¶ 37.

By contrast, venue is not proper in this district under subsection (2) because none of the events giving rise to any of Bunn's claims took place here. Venue does not lie in this district under subsection (3), either. That provision of the venue statute may be invoked only "if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a)(3). Thus, because venue is proper in the Central District of California, subsection (3) does not apply. The only question, then, is whether venue is proper in this district under subsection (1), based on the defendants' residences. The Court finds that it is not.

Under subsection (1), venue is proper in this district if all of the defendants reside in New York State and at least one of them resides in the Southern District of New York. 28 U.S.C. § 1391(a)(1). For venue purposes, a "natural person" resides in the district where the person is

8

domiciled.  *Id.* § 1391(c)(1).  An individual "has but one domicile."  *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000).  It "is 'the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.'"  *Id*. (quoting *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998)).  "A party alleging that there has been a change of domicile has the burden of proving the 'require[d] . . . intent to give up the old and take up the new [domicile], coupled with an actual acquisition of a residence in the new locality,' and must prove those facts 'by clear and convincing evidence.'"  *Id*. (quoting *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 243–244 (2d Cir. 1984)).  Any kind of defendant other than a natural person, such as a company, resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."  *Id*. § 1391(c)(2).

Bunn fails to plead that Dash and Horn are domiciled in New York, and the Court is not persuaded that they are domiciled here.[3]  In the First Amended Complaint, Bunn alleges that Dash and Horn are "part time California resident[s]" and "part time New York State resident[s]."  FAC ¶¶ 4, 7.  But that is not an option under the venue statute.  A natural person is a resident of only one state for venue purposes: the state of his or her domicile.  The balance of facts strongly suggest that Dash and Horn reside in California, as Bunn alleged in her original complaint [ECF

---

[3] Poppington LLC, a New York company, clearly resides in New York.  The defendants' arguments to the contrary, "given that its operations are wholly based in California," Def. Mem. at 10, are specious.  There is some question as to whether Damon Dash Studios is a distinct entity.  *See* FAC ¶ 5 (naming Damon Dash Studios as a defendant but alleging that it is merely "the alter ego of Dash" and that it is not registered as any kind of business association "in any state"); Def. Mem. at 2, 19 (arguing that "the unidentified entity Damon Dash Studios is not sufficiently alleged as an entity capable of being sued"); Pl. Opp. at 13 (conceding that Damon Dash Studios might be "a division of Poppington").  But none of this changes the Court's analysis because the venue statute requires that "all defendants reside" in New York, and Court is not persuaded that Dash and Horn are domiciled here.

#8 ¶¶ 4, 7].[4]  Bunn went to stay at their "residence" in Los Angeles.  *Id.* ¶ 13.  That is also where their company's studio is located.  And Bunn alleges that her property remains with Dash and Horn in Los Angeles.  That Bunn attempted to serve the defendants in Los Angeles suggests that she knows that is their "true fixed home and principal establishment."  *Palazzo ex rel. Delmage*, 232 F.3d at 42.  Bunn adds allegations about old addresses and lawsuits in New York, but these allegations suggest only that Dash and Horn used to live here.  They do not suggest that they currently reside and intend to remain in New York.

Even if venue were proper in this district, however, the Court may transfer claims "[f]or the convenience of the parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a). "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis."  *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).  District courts consider a number of factors, including: (1) the plaintiff's choice of forum; (2) the convenience of witnesses; (3) the location of relevant documents and relative ease of access to sources of proof; (4) the convenience of parties; (5) the locus of operative facts; (6) the availability of process to compel the attendance of unwilling witnesses; and (7) the relative means of the parties.  *Id.* at 106-07; *see also, e.g.*, *Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002).

These factors need not carry equal weight.  *Hoadley v. MoneyGram Payment Sys., Inc.*, No. 08-cv-11192, 2009 WL 2001327, at *2 (S.D.N.Y. July 9, 2009).  Courts often find that where, as here, "there is 'no material connection between this district and the operative facts, . . .

---

[4] Both of the complaints that Bunn's counsel has filed against Dash on behalf of other plaintiffs allege that Dash resides in California.  *Brooks v. Dash*, 19-cv-1944 [ECF #1 ¶ 3 (Dash "is a California resident")]; *Webber v. Dash*, 19-cv-610 [ECF #6 ¶ 5 (same)].

the interests of justice require the transfer of [the] action.'" *Brown v. Dow Corning Corp.*, No. 93- cv-5510, 1996 WL 257614, at *2 (S.D.N.Y. May 15, 1996) (quoting *Mobile Video Servs., Ltd. v. National Ass'n of Broadcast Employees and Technicians, AFL-CIO*, 574 F. Supp. 668, 671 (S.D.N.Y. 1983)); *see also Wechsler v. Macke Int'l Trade, Inc.*, No. 99-cv-5725, 1999 WL 1261251, at *4 (S.D.N.Y. Dec. 27, 1999) (noting that "Courts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district"). Moreover, "[w]hen the plaintiff's choice is not [her] home forum," her choice deserves less weight because "the assumption that the chosen forum is appropriate is in such cases 'less reasonable.'" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–256 (1981)).

The defendants move to dismiss this case based on the doctrine *forum non conveniens*, arguing that California is the only appropriate forum. Def. Mem. at 21–22. Bunn correctly points out that transfer, not dismissal, is the appropriate procedural vehicle. Pl. Opp. at 18. Even if neither party moved to transfer venue, the Court could order a transfer of venue *sua sponte*. *Moscato v. MDM Grp., Inc.*, No. 05-cv-10313, 2008 WL 2971674, at *5 (S.D.N.Y. July 31, 2008). However, apparently recognizing the likelihood that the Court would find the *forum non conveniens* argument persuasive, Bunn brings her own motion to transfer to the Eastern District of Pennsylvania.

As the Court laid out in detail above, this case arises entirely out of events that took place in the Central District of California. Neither Bunn, nor any of the facts or circumstances of this case have any connection to New York. Nor is there any connection to Pennsylvania, other than that it is Bunn's home state, which deserves little weight because it is not the forum she chose.

11

*See Sinochem Int'l Co.*, 549 U.S. at 430.  For all of these reasons, the Court finds that this case should be transferred to the Central District of California.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's motions for a default judgment, enlargement of time to serve the defendants, and to transfer this case to the Eastern District of Pennsylvania [ECF #23, 58] are DENIED.  The defendants' motion to vacate the Clerk's entry of default and dismiss this case [ECF #52] is GRANTED in part, insofar as the default is vacated for lack of proper service, and DENIED in part, with respect to dismissal.  The Clerk of Court is respectfully directed to TRANSFER this case to the Central District of California and then close the case.

**SO ORDERED.**

**Dated:**     **August 10, 2020**  
            **New York, New York**         **MARY KAY VYSKOCIL**  
                                                       **UNITED STATES DISTRICT JUDGE**